UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSMAN TAJ,

                    Petitioner,

      v.

PAMELA BONDI ET AL.,

                    Respondents.

Case No. C26-0678-SKV

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Osman Taj is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his detention has become prolonged and that continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. *See* Dkt. 1 at 8. Respondents, in a return petition, argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) and deny need for a bond hearing. *See* Dkt. 6 at 6.

Having considered the petition, the return and supporting declarations, Petitioner's reply, Dkt. 9, and the governing law, the Court herein GRANTS the petition and ORDERS

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Respondents to provide Petitioner with a bond hearing within fourteen days of the date of this Order.

## I.   BACKGROUND

Petitioner is a native and citizen of Afghanistan. *See* Dkt. 1 at 2. On January 21, 2025, Petitioner arrived in the United States. He was promptly detained and placed in expedited removal proceedings. *See id.* at 3; Dkt. 7-1 at 4. On February 2, 2025, he was transferred to NWIPC. *See* Dkt. 8 at 2.

On March 10, 2025, Petitioner was given a credible fear interview limited to assessing his eligibility for Convention Against Torture ("CAT") relief. *See id.* An asylum officer made a negative fear determination the following day. *See* Dkt. 1 at 4; Dkt. 8 at 2.

On May 6, 2025, Respondents assert that "a travel document request was created." Dkt. 8 at 2. On August 16, 2025, Petitioner reasserted fear of returning to Afghanistan and "refused to provide [unspecified] voluntary travel documentation." *Id.* On September 11, 2025, a new credible fear referral was sent to United States Citizenship and Immigration Services ("USCIS"). *See id.*

On September 18, October 1, and October 6, Petitioner had additional credible fear interviews. *See* Dkt. 1 at 4; Dkt. 8 at 3. Two days after the final interview, an asylum officer found Petitioner ineligible for asylum and further found that he had not established a reasonable probability of suffering persecution or torture if returned to Afghanistan. Dkt. 1 at 4. That determination was referred to an Immigration Judge. *See id.* On October 20, 2025, an Immigration Judge vacated the asylum officer's negative fear determination. *See id.*; Dkt. 7-2 at 3 (Order). Petitioner was subsequently served with a Notice to Appear. Dkt. 7-3 at 2 (Notice to Appear).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

On February 2, 2026, following an individual hearing, an Immigration Judge denied Petitioner asylum, ordered him removed to Afghanistan, and granted withholding of removal to Afghanistan. *See* Dkt. 1 at 2; Dkt. 7-4 at 2, 4. The Government did not designate any other country for removal besides Afghanistan during Petitioner's removal proceedings. *See* Dkt. 1 at 5. On February 25, 2026, Petitioner filed the instant petition for a writ of habeas corpus seeking a bond hearing. *See id.* at 9. On March 1, 2026, Petitioner appealed the Immigration Judge's decision. *See* Dkt. 8 at 3; Dkt. 9 at 1.

## II.    DISCUSSION

### A.    Statutory Framework and Legal Standards

The parties agree that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). *See* Dkt. 1 at 8; Dkt. 6 at 6. Noncitizens are considered "applicants for admission" to the United States when they "arrive" in the United States or are "present" in this country but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.*

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an . . . [Immigration Judge] or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111–12 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). However, where a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," they must be referred for an interview with an

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

asylum officer. *Id*. (quoting 8 U.S.C. § 1225(b)(1)(A)(ii); citing 8 C.F.R. § 208.30(d)). If the officer finds a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." *Id*. (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Both § 1225(b)(1) and § 1225(b)(2) mandate detention of noncitizens for the entirety of the applicable proceedings. *Jennings*, 583 U.S. at 302. And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296). However, both the Supreme Court and Ninth Circuit have "grappled . . . with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015) (quoted source omitted) (discussing, *inter alia*, *Zadvydas v. Davis*, 533 U.S. 678 (2001), *Demore v. Kim*, 538 U.S. 510 (2003), and *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005))*, rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Toktosunov v. Wamsley*, C25-1724-TL, 2025 WL 3492858, at *2–4 (W.D. Wash. Dec. 5, 2025) (discussing case law).

In *Jennings*, the Supreme Court held that § 1225(b) "unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda*, 385 F. Supp. 3d at 1115 (citing *Jennings*, 583 U.S. at 297, 303). While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the Immigration and Nationality Act, *see Jennings*, 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

so[,]" *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).  Moreover, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116).

Neither the Supreme Court, nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention.  *See Banda*, 385 F. Supp. 3d at 1106.  This Court applies the "*Banda*" test in determining whether a noncitizen's detention under § 1225(b) violates due process.  *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3; *Hong v. Mayorkas*, C20-1784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).  In *Banda*, the Court found "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1106, 1117.  The Court declined to adopt a rule that detention became unreasonably prolonged at six months, explaining that, pursuant to *Zadvydas*, "at six months, the burden is on the detainee—not the government—to establish a basis for release[,]" and found such a rule would be "inconsistent with the fact-dependent nature of the constitutional question before the Court, namely whether petitioner's prolonged detention has become unreasonable." *Id*. at 1117 (citing *Zadvydas*, 533 U.S. at 701).  The Court, instead, adopted a multi-factor test to apply in making the determination of whether § 1225(b) detention has become unreasonable, considering:  "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

removal." *Id*. at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)).

B.     Application of the *Banda* Test

In view of its precedents, the Court applies the *Banda* test in determining whether Petitioner's continued detention without a bond hearing is justified.

1.     *Length of Detention*

The first factor, the length of detention to date, is the most important one.  *See Banda*, 385 F. Supp. 3d at 1118.  "The longer mandatory detention continues . . . the harder it is to justify."  *Murillo-Chavez v. Garland*, C22-0303-LK-MLP, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (citing cases).  Petitioner has been continuously detained since January 21, 2025, —over fourteen months as of the date of this Order.  This period of detention falls squarely within the range of what this Court typically finds unreasonable.  *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *4 (citing cases finding periods of detention ranging from eleven to thirty months to favor the detainee, and finding the same for a petitioner detained for nearly twelve months); *see also Toktosunov*, 2025 WL 3492858, at *4 (finding sixteen months of detention favored detainee); *Banda*, 385 F. Supp. at 1118–19 (finding approximate seventeen-month detention strongly favored detainee).  The Court therefore finds the first *Banda* factor weighs in Petitioner's favor.

2.     *Likely Duration of Future Detention*

Under the second *Banda* factor, the Court considers how long the petitioner's detention is likely to continue absent judicial intervention, *i.e.,* "the anticipated duration of all removal proceedings—including administrative and judicial appeals."  *Banda*, 385 F. Supp. 3d at 119

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

(quoting *Jamal A.*, 358 F. Supp. 3d at 859).  Petitioner has appealed the Immigration Judge's decision to the BIA.  *See* Dkt. 9 at 1; Dkt. 8 at 3.  This Court has observed that BIA appeals can take over six months, and it recognizes that any further appeals to the federal courts will take substantial time to resolve.  *See Toktosunov*, 2025 WL 3492858, at *5.  Given that Petitioner's appeals process is likely to take a number of months, if not more, this factor weighs in Petitioner's favor.

3.      *Conditions of Detention*

Under the third *Banda* Factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained.  "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."  *Banda*, 385 F. Supp. at 1119 (quoted source omitted).

Petitioner is detained at NWIPC.  He points out that the conditions are "penal-like," as his movements, privacy, access to health care, food, recreation, and grooming are all restricted.  *See* Dkt. 1 at 8.  This Court has found in prior actions that conditions at NWIPC are "similar . . . to those in many prisons and jails."  *Maliwat*, 2025 WL 2256711, at *6 (citing *Doe v. Bostock*, 2024 WL 3291033, at *11 (W.D. Wash. March 29, 2024); *Rahman v. Garland*, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025)); *see also Toktosunov*, 2025 WL 3492858, at *5.  Respondents do not address the conditions to which Petitioner is subject and therefore have not demonstrated that a different conclusion is warranted here.  *See* Dkt. 6 at 7.  In view of those conditions, the third factor weighs in Petitioner's favor.

4.      *Delays in the Removal Proceedings Caused by Petitioner*

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the Petitioner.  *See Banda*, 385 F. Supp. 3d at 1119.  Respondents aver that Petitioner

lengthened his detention by appealing the Immigration Judge's decision despite being granted withholding of removal.  "But for that request," Respondents argue, "his detention could have concluded in the near future either due to his removal or his release from detention if removal was not possible."  Dkt. 6 at 8.

"A 'delay' caused by an appeal is not generally considered dilatory conduct; a noncitizen has a right to an appeal."  *Haidari v. ICE Field Office Director*, C26-0039-TL, 2026 WL 764689, at *5 (W.D. Wash. Mar. 18, 2026) (first citing *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025); then citing *Nguyen v. Scott*, No. C25-1988-SKV, 2026 WL 194232, at *4 (W.D. Wash. Jan. 26, 2026)).  Absent any indication of a petitioner-caused delay, this factor weighs neutral.

5.      *Delays in the Removal Proceedings Caused by Respondents*

Under the fifth factor, the Court "considers the nature and extent of any delays in the removal proceedings caused by the government."  *Banda*, 385 F. Supp. at 1120.  Petitioner argues that the Government repeatedly delayed his credible fear screenings—first by failing to conduct his initial interview for almost two months after he was detained, then by failing to refer the resulting negative fear finding to an Immigration Judge for review, and then by conducting three separate credible fear interviews in September and October 2025.  *See* Dkt. 1 at 7. Respondents answer that Petitioner did not express fear of being returned to Afghanistan until March 10, 2025, weeks after he was detained, that it is not clear whether Petitioner sought review of the resulting negative fear determination, and that the September and October interviews assessed Petitioner for more than just CAT eligibility.  *See* Dkt. 6 at 8.

The credible fear determination process in this case has been protracted.  On March 11, 2025, a first negative fear determination was made, and no further review occurred.  *See* Dkt. 8

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

at 2. Almost one month later, on May 6, a travel document request was "created." *Id.* It is not clear whether a travel document request was ever submitted, and Respondents point to no other efforts made to remove Petitioner. Over three months later, Petitioner reasserted fear of returning to Afghanistan and it took almost one month to make a new credible fear interview referral to USCIS. *See id.* Respondents do not explain why three separate interviews spanning weeks were necessary to address that referral. In light of these sequential, unexplained delays, the fifth factor favors Petitioner.

6.    *Likelihood Removal Proceedings Will Result in Final Order of Removal*

Finally, under the sixth *Banda* factor, the Court considers "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (quoted source omitted). The Court, in other words, considers whether the petitioner has asserted any defenses to removal. *Id*. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id*. (cited source omitted). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id*. (quoted source omitted).

Petitioner sought asylum and was denied. He is presently litigating his appeal. The Court is not positioned to determine whether his appeal is nonfrivolous or the likelihood that he will prevail. Accordingly, this factor weighs neutral. *See id.*

7.    *Weighing the Factors*

In sum, four factors (length of detention, likely duration of future detention, conditions of detention, and delays caused by Respondents) weigh in Petitioner's favor, including the most

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

important one—length of detention to date. The other two factors (delays caused by Petitioner, and likelihood removal proceedings will result in final order of removal) are neutral. No factors weigh in Respondents' favor. The Court therefore concludes that the *Banda* test, on balance, favors Petitioner, that his continued detention under § 1225(b) has become unreasonable, and that due process requires that he be provided a bond hearing. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *8–9 (finding same where two factors, including length of detention, clearly favored petitioner, the two factors considering delay were either neutral or slightly favored petitioner, and the final two factors were neutral; noting that cases finding a petitioner not entitled to a bond hearing "often find that several factors weigh in favor of the government or that more factors are neutral and favor the government than favor the petitioner."); *Banda*, 385 F. Supp. 3d at 1120 (finding same where four factors weighed in petitioner's favor and two were neutral).

C.    Relief

Having found Petitioner's continued detention unreasonable, the Court turns to the relief requested. Petitioner requests that the Court issue a writ of habeas corpus ordering Respondents to provide Petitioner with an individualized hearing in immigration court, within 10 days, at which Respondents will bear the burden of establishing that Petitioner is dangerous or a flight risk. In the event that Respondents fail to meet that burden, Petitioner asks that the Court to order that he "be immediately released without bond, ankle monitor, or other conditions[.]" Dkt. 1 at 9.

The Court, consistent with the practice of this District, will order that a bond hearing be held before an immigration judge within fourteen days of this Order. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. Also, and as this Court has previously recognized, Respondents are properly held to a clear and convincing standard of proof at that

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

hearing, *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and, if they fail to meet that burden, Petitioner's financial circumstances and alternative release conditions must be considered, *see, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. Absent any information about Petitioner, besides the length of his detention and efforts to obtain immigration relief, and without any reason to believe inappropriate conditions of release may be imposed, the Court declines to consider the necessity or propriety of any specific release conditions.

### III.   CONCLUSION

Based on the foregoing, this Court hereby FINDS and ORDERS as follows:

(1)   Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED.

(2)   Within **fourteen (14) days** of the date of this Order, Respondents shall provide Petitioner an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

(3)   Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 1st day of April, 2026.

_____
S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11